UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUREEN M. BILLINGS,

                           Plaintiff,

     -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, ROGER A. MURPHY, PAUL J.
ARTUZ, and DIANE CURRA

                       Defendants.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: __09/10/2021__

19-cv-11796 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Plaintiff Maureen M. Billings ("Plaintiff"), brings this action for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act, 42 U.S.C. § 12112 ("ADA"), and N.Y. Executive Law § 296. Plaintiff asserts these claims against the New York State Department of Corrections and Community Supervision ("DOCCS"), Deputy Superintendent for Security Roger A. Murphy, Captain Paul J. Artuz, and Diane Curra alleging that they discriminated and retaliated against her as a Muslim woman suffering from diabetes and stress-related impairments.

Presently before the Court is Defendants' motion to dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 20.) For the following reasons, the motion is GRANTED.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint (ECF No. 8) and are accepted as true for purposes of this motion.

1

Plaintiff is a practicing Muslim woman that, in compliance with her faith, wears a hijab in public. (Am. Compl. ¶ 15.) Plaintiff also has diabetes. (Am. Compl. ¶ 9.) Plaintiff is employed as a Correction Officer with the New York State Department of Corrections at the Bedford Hills Correctional Facility. (Am. Compl. ¶ 16.) On October 14, 2016, Plaintiff submitted a letter to the Diversity Management Office requesting permission to wear a hijab at work. (Am. Compl. ¶ 17.) The request was approved on or around April 28, 2017, subject to certain conditions, including (1) the hijab must be tucked under her uniform shirt, (2) the hijab must be no larger than three feet by three feet, and (3) it must be worn in a way to prevent it being torn away. (Am. Compl. ¶¶ 19, 21.)

Prior to letting her wear a hijab, the Deputy Superintendent of Security had to confirm that Plaintiff's hijab met these approved specifications. (Am. Compl. ¶ 19.) The Diversity Management Office stated that a supervisor would meet with Plaintiff to have her demonstrate that the hijab met the requirements laid out in her approval letter. (Am. Compl. ¶ 20.) It also stated that if she indicated she could not remove the hijab in front of other people, she would be provided with a private area to remove it, or told to leave and come back with it available for inspection. (Am. Compl. ¶ 20.)

On May 1, 2017, Plaintiff was ordered to report to Defendant Murphy's office. (Am. Compl. ¶ 22.) Plaintiff was accompanied by a female union representative. (Am. Compl. ¶ 23.) Defendant Murphy reprimanded Plaintiff for wearing her hijab at work without first consulting him, and instructed her to tuck it into her shirt (as per the approved specifications). (Am. Compl. ¶ 24.) Plaintiff explained she did not consult with him or any other supervisors because there were no high-ranking supervisors on duty over the weekend, and Plaintiff wore her hijab since she believed it was "an urgent matter." (Am. Compl. ¶ 25.)

On May 2, 2017, Plaintiff was ordered to report to Defendant Artuz's office, again accompanied by a female union representative.  (Am. Compl. ¶¶ 26-27.)  Defendant Artuz stated her hijab needed to be three feet by three feet in size.  (Am. Compl. ¶ 28.)  Plaintiff asked for the directive that stated this rule, and Defendant Artuz responded that she can "like it or take it off." (Am. Compl. ¶ 29.)  Plaintiff and the union representative then cut down the hijab outside of Defendant Artuz's presence.  (Am. Compl. ¶ 30.)

Defendant Artuz then stated that Plaintiff had three options if she wanted to wear the hijab in the prison: (1) take the hijab off and go to work, (2) keep the hijab on, go home and "deal with the consequences," or (3) demonstrate that the hijab could be pulled off quickly without choking her.  (Am. Compl. ¶ 31.)  Plaintiff stated she could perform the demonstration in front of a female supervisor, as her religion prohibits her from disrobing in front of men outside of her immediate family.  (Am. Compl. ¶ 32.)  Defendant Artuz insisted Plaintiff remove her hijab in front of him as there were no female supervisors available.  (Am. Compl. ¶ 33.)  Plaintiff then removed her hijab in front of Defendant Artuz.  (Am. Compl. ¶ 34.)  There were two female supervisors on duty at this time.  (Am. Compl. ¶ 34.)

After this meeting, Plaintiff was walking back to her post when her knee "buckled" twice, causing her to fall.  (Am. Compl. ¶ 35.)  Plaintiff was told she was not fit for duty and sent to the medical clinic where they instructed her to fill out Worker's Compensation papers and sent her home.  (Am. Compl. ¶¶ 36-37.)  Plaintiff was seen by her doctor, who diagnosed her injury as stress related.  (Am. Compl. ¶ 39.)  Sometime thereafter, Plaintiff returned to work with a doctor's note that cleared her to return to duty.  (Am. Compl. ¶ 40.)  Plaintiff presented the note to Defendant Curra, who stated that stress is a mental illness not covered under Worker's Compensation.  (Am. Compl. ¶ 41.)  Plaintiff was then instructed to complete "mental illness

forms" prior to returning to work.  (Am. Compl. ¶ 42.)  She subsequently completed the form, but it was denied for having the wrong date.  (Am. Compl. ¶ 42.)

On June 27, 2017, Plaintiff received a letter stating that she was being removed from the payroll as of May 27, 2017.  (Am. Compl. ¶ 45.)  Plaintiff's doctor signed a Worker's Compensation document on July 21, 2017, stating that Plaintiff was neurologically cleared, not depressed, and had no emotional issues preventing her from returning to work on August 1, 2017. (Am. Compl. ¶ 43.)  Defendant Curra rejected the doctor's notes.  (Am. Compl. ¶ 44.)

Plaintiff submitted "medical documentation receipts" from May through August.  (Am. Compl. ¶ 46.) Her July 25, 2017 receipt is listed as not conforming to DOCCS standards.  (*Id*.) Shortly after, on or about August 4, 2017, Plaintiff was informed that she had been overpaid $13,598.04 for the time-period of May 16, 2017 through July 19, 2017.  (Am. Compl. ¶ 47.)

Plaintiff filed multiple grievances and letters discussing the alleged discrimination and retaliation.  In August of 2017, Plaintiff filed grievances with the New York State Department of Labor and the New York State Correctional Officers & Benevolent Association, Inc.  (Am. Compl. ¶¶ 48-49.)  In September of 2017, Plaintiff submitted a letter to the Director of Diversity Management discussing the incident with her hijab and her denial to return.  (Am. Compl. ¶ 50.) She then filed a grievance against the Diversity Management Office, as her August grievances were ignored.  (Am. Compl. ¶ 51.)  In September, Plaintiff also submitted a letter to Human Resources detailing a medical examination scheduled by Defendants.  (Am. Compl. ¶ 52.)

On or about December 7, 2017, Plaintiff was permitted to return to work.  (Am. Compl. ¶ 53.)

In this action, Plaintiff requests a total of $8 million in damages, plus punitive damages, costs, and attorney's fees, and an injunction requiring Defendants (1) "to correct all present and

past violations of federal and state law," (2) "to allow the Plaintiff to continue in the position from which Defendants' illegally terminated her," (3) "to enjoin the Defendants from continuing to act in violation of federal and state law" and "to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws." (Am. Compl. at 20.)

## **LEGAL STANDARD**

*Fed. R. Civ. P. 12(b)(1)*

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citations and quotation marks omitted). "[T]he 'irreducible constitutional minimum' of standing" requires that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" each element of constitutional standing. *Id.* (citations omitted). Because "the elements of Article III standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotations omitted).

*Fed. R. Civ. P. 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting Twombly, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.     Title VII

Plaintiff alleges religious discrimination and retaliation against DOCCS[1] under Title VII.[2] (Am. Compl. ¶¶ 54-69.) The Court evaluates each claim separately below.

---

[1] In her Opposition, Plaintiff concedes that her Title VII claim is only against DOCCS. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.") (ECF No. 37) at 12.)

[2] Plaintiff also appears to allege disability discrimination under Title VII. (Am. Compl. ¶ 55.) However, Title VII does not prohibit discrimination based upon disability. *See Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 710 (S.D.N.Y. 2013) ("Title VII is not directed against

A.  **Religious Discrimination**

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To survive a motion to dismiss, a claimant must plausibly allege two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  *Lowman v. NVI LLC*, 821 Fed. Appx. 29, 30 (2d Cir. 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)).

An employer discriminates against an employee "by taking an adverse employment action against him."  *Vega*, 801 F.3d at 85.  An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Id*. (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  The Second Circuit has indicated that such an action "is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id*. (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Relatedly, an adverse action is defined in part by the causal role the claimant's protected identity played in the change.  Thus, the change in terms and conditions must be "because of" the employee's race, color, religion, sex or national origin, and the claimant's protected identity must be "a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action."  *Id.* (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989) (plurality opinion), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071).  At this stage, an employee must allege the adverse action was made "at least in part for a discriminatory reason" and this may be done by "alleging facts that directly show discrimination

_____

disabilities, only against discrimination based on race, color, religion, sex, or national origin.").  Therefore, the Court dismisses Plaintiff's disability discrimination claim under Title VII.

or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*. at 87 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).

        *a.   Adverse Employment Action*

        Here, Plaintiff appears to allege three potential adverse employment actions: (1) being reprimanded for wearing her hijab; (2) denial of her request to take off her hijab in front of a female supervisor; and (3) being dismissed from work, taken off the payroll, and prevented from returning for an extended period of time.

        First, Defendant Murphy's reprimand regarding Plaintiff's use of a hijab without consulting him is not an adverse action.  "A negative evaluation or official reprimand may, in some circumstances, constitute adverse employment action . . . but only when it triggers negative consequences to the conditions of employment." *Brown v. City of New York*, 2014 WL 5394962, at *8 (S.D.N.Y. Oct. 23, 2014) (internal quotations omitted); *see also Crews v. City of Ithaca*, 3:17-cv-00213 (MAD/DEP), 2018 WL 1441282, at *5 (N.D.N.Y. Mar. 21, 0218) ("[A] complaint must allege more than just the existence of a reprimand to establish an adverse action, it must also allege facts that indicate a demonstrably adverse employment consequence.").  Here, there are no allegations that this informal reprimand led to any further consequences or altered Plaintiff's employment.

        Next, Plaintiff alleges that being denied an accommodation for her hijab "demonstration"—*i.e.*, the request to demonstrate that she could quickly remove her hijab without choking herself—was an adverse action.  Denial of an accommodation may be considered an adverse action.  *Little v. NBC*, 210 F. Supp. 2d 330, 337 (S.D.N.Y. 2002) ("While there is no exhaustive list of what constitutes an adverse employment action, courts have held that the following actions, among others, may qualify:  . . . denial of a requested employment

accommodation[.]")  However, a claimant must still allege a material adverse change as a result of the denial of the accommodation.  *See Reyes v. New York State Office of Children and Family Services*, No. 00 Civ. 7693(SHS), 2003 WL 21709407, at *7 (S.D.N.Y. July 22, 2003) ("[T]he sole adverse action that Reyes alleged . . . with respect to national origin discrimination is [the defendant's] denial of his request for religious accommodation.  As Reyes suffered no material consequences from that denial, it cannot constitute an adverse employment action.").  Here, regardless of any discomfort that Plaintiff may have experienced in removing her hijab, she has failed to allege a material adverse change to her employment due to Defendant Artuz offering her the choice to remove her hijab, keep her hijab on and leave, or demonstrate that her hijab was not dangerous.

Lastly, Plaintiff alleges that DOCCS discriminated against her by dismissing her from work, taking her off the payroll, and not allowing her back for months.  "[C]ourts have found unpaid leave to be an adverse employment action in the context of [] Title VII [] claims.  *Jamil v. Sessions*, 14-CV-2355 (PKC) (RLM), 2017 WL 913601, at *8 (E.D.N.Y. Mar. 6, 2017); *see also Hughes v. City of Rochester*, 12-CV-6112, 2016 WL 4742321, at *6 (W.D.N.Y. Sept. 12, 2016) (stating, in a Title VII discrimination case, that "at a minimum, the adverse employment actions [] include: [the employer's] decision to place plaintiff on unpaid leave").  Plaintiff alleges she was dismissed from her place of work with no pay for about seven months, which clearly constitutes a material change in her employment.  Thus, the Court finds that Plaintiff's dismissal and removal from the payroll for about seven months constitutes an adverse employment action

### b.  *Inference of Discrimination*

However, if Plaintiff did successfully plead three adverse employment actions, her claim would fail on the second element.  In other words, Plaintiff fails to plead any facts showing a

plausible inference of discrimination.  She does not allege that any comments were made about her hijab, that she was asked to not wear it at work, or anything that would suggest that the alleged discrimination she faced was related to her adherence to Islam.  *Glascoe v. Soloman*, 18 Civ. 8284, 2020 WL 1272120, at *7 (S.D.N.Y. Mar. 17, 2020).

Plaintiff argues that the temporal proximity between the relevant events gives rise to an inference of discrimination.  (Am. Compl. ¶ 67.)  The timing and sequence of events may adequately establish an inference of discrimination at the motion to dismiss stage.  *See Govori v. Goat Fifty, L.L.C.*, 519 Fed. Appx. 732, 734 (2d Cir. 2013) (holding temporal proximity between events may give rise to a *prima facie* case of discrimination); *Babsky v. DeLeo*, 1:16-cv-08576, 2017 U.S. Dist. LEXIS 45883, at *12 (S.D.N.Y. Mar. 27, 2017) (Parker, Mag. J.) ("The timing and sequence of events—that is, Plaintiff's refusal to work during his religious observances, [Defendant's] allegedly derogatory remark about Plaintiff's religion during a conversation about reasonable accommodations, and Plaintiff's discharge days later—is sufficient at this early stage in the litigation to plausibly support an inference of religious discrimination.").  However, the timing of events here is insufficient to give rise to an inference of discrimination because, unlike *Babsky*, the Amended Complaint does not allege that any DOCCS employee ever made any negative or discriminatory remarks about Plaintiff's religion.

Further, the sequence of events viewed chronologically undermines Plaintiff's claim of an inference of discrimination.  While Plaintiff was dismissed shortly after attending her meeting with Defendant Artuz regarding her hijab, there is no allegation that this meeting motivated her dismissal in any way.  Instead, Plaintiff alleges that she had already complied with the conditions DOCCS put in place before she could wear her hijab and that DOCCS recognized that she had complied with these conditions.  Accordingly, Plaintiff fails to allege any discriminatory reason

for DOCCS to prevent her from working after she had already confirmed with a supervisor that her hijab conformed to the requirements mandated for her to safely wear a hijab as a corrections officer.

Plaintiff's own pleadings demonstrate that she admitted that she was dismissed for non-discriminatory reasons.  Plaintiff states that she was sent to the medical clinic and subsequently sent home due to falling twice.  (Am. Compl. ¶¶ 35-37.)  There is no indication that Plaintiff was instead sent home because of her accommodation request.[3]  There are also no facts to infer that Plaintiff was kept from working due to her religion.  Instead, the facts as alleged show that Plaintiff was not allowed back to work because, by her admission, (1) she failed to adequately fill out the necessary paperwork—*i.e.*, her mental illness forms were rejected because they contained incorrect information—and (2) she submitted Worker's Compensation forms after being told they do not apply to mental illness.  (Am. Compl. ¶¶ 41-43.)  Plaintiff does not allege in the Amended Complaint that she ever resubmitted the corrected forms and thus complied with nondiscriminatory conditions of her employment.  Therefore, Plaintiff has not made a plausible showing that her membership in a faith community was a motivating factor of any adverse employment action.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's Title VII discrimination claim, and dismisses the claim without prejudice.[4]

_____

[3] Plaintiff alleges for the first time in her Opposition that her meeting with Defendant Artuz caused her stress.  (Pl.'s Opp. at 15.)  However, "[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss." *K.D. ex rel Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citing cases). The Court will not acknowledge this allegation while addressing Plaintiff's claims.

[4] Plaintiff includes the standard for a failure to accommodate claim in her Opposition. (Pl.'s Opp. at 14.)  However, this claim requires the claimant to be disciplined for failing to comply with a conflicting employment requirement.  *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).  Here, Plaintiff chose to comply with DOCCS and Defendant Artuz's requests.  *See Chavis v. Wal-Mart Stores East, LP*, 265 F. Supp. 2d 391, 399–400 (S.D.N.Y. 2017) (dismissing a failure to accommodate claim where the plaintiff complied with her job requirements and did not suffer

B. **Retaliation**

Plaintiff alleges that DOCCS retaliated against her in violation of Title VII by forcing her to leave work, taking her off the payroll, and refusing her permission to return for an extended period of time, all after she requested her religious accommodation.[5]  (Am. Compl. ¶¶ 62-67.)

To state a claim for retaliation under Title VII, a claimant must plead facts that show that (1) he or she "participated in a protected activity known to the defendant"; (2) "the defendant took an employment action disadvantaging" him or her; and (3) there was a "connection between the protected activity and adverse action."  *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)).  For a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: "(1) defendants discriminated or took an adverse employment action against him [or her], (2) because he [or she] has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (internal quotations omitted).

In the Title VII retaliation context, an "adverse employment action" is read more broadly than in the Title VII discrimination context.  *Id.*  Thus, an adverse employment action sufficient to support a retaliation claim is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* (quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)).  To show causation between the adverse action and the protected activity, a claimant must plausibly plead a connection between the two events.  *Id.*

---

any discipline or adverse employment action).  Therefore, if Plaintiff is alleging a failure to accommodate claim, it is also dismissed.

[5] Plaintiff also alleges DOCCS informed her that she was overpaid for a period of time in 2017.  (Am. Compl. ¶¶ 46-47.)  However, the Amended Complaint does not state if Plaintiff actually was overpaid, and how DOCCS came to this conclusion.  Due to this lack of information, the Court will not address this allegation.

Similar to discrimination claims, this may be done using temporal proximity.  *Id*. (citing *Cifra v. Gen. Elec. Co*., 252 F.3d 205, 217 (2d Cir. 2001).

Additionally, a plaintiff bringing a Title VII retaliation claim, "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Id*.  But-for causation requires a showing that "the adverse action would not have occurred in the absence of the retaliatory motive."  *Id*. at 91 (citing *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

Here, shortly after requesting to wear her hijab at work, Plaintiff was directed to go home, taken off the payroll, and precluded from returning for several months.  Plaintiff satisfies the first element as requesting a religious accommodation constitutes protected activity.  *Privler v. CSX Transp., Inc*., 1:18-cv-1020 (BKS/CFH), 2021 WL 3603334, at *19–20 (N.D.N.Y. Aug. 13, 2021). Additionally, as discussed above, being placed on unpaid leave is an adverse employment action. *Jamil*, 2017 WL 913601, at *8.  Plaintiff alleges she was dismissed from her place of work for about seven months, which clearly constitutes an action that would dissuade an employee from a protected activity.  Thus, the Court finds that Plaintiff's dismissal and removal from the payroll constitutes an adverse employment action.

Plaintiff must also show a connection between her religious accommodation request and the adverse employment action.  Here, similar to her discrimination claim, Plaintiff relies on the temporal proximity to make this connection.  (Am. Compl. 67.)  In the retaliation context, this is sufficient where the temporal proximity is "very close."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Deravin v. Kerik*, No. 00 CV 7487 (KMW) (KNF), 2007 WL 1029895, at *11 (S.D.N.Y. Apr. 2, 2007) (discussing how time periods greater than one year have been generally rejected to establish a causal connection).  The Amended Complaint alleges that Plaintiff requested her accommodation on October 14, 2016, her accommodation was approved on

or around April 28, 2017, and she was dismissed on May 2, 2017.  (Am. Compl. ¶¶ 17, 21, 26, 35, 37.)  This is too long of a time period to presume a connection between her accommodation request and her dismissal.  *See Wojcik v. Brandiss*, 973 F.Supp.2d 195, 216 (E.D.N.Y. 2013) (holding a time period of nearly six months between the employee's complaints about his supervisor and the incident that led to his termination was too long of a time period to support his retaliation claim); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 614 (E.D.N.Y. 2010) ("Second Circuit courts have rejected finding a causal inference when there were gaps of three months, six months, eight months, one year, and eleven months between the filing of the complaint and the alleged retaliation.") (internal quotations omitted).

Plaintiff also details multiple grievances and letters she filed regarding her "discriminatory and retaliatory treatment" in August and September of 2017.  (Am. Compl. ¶¶ 48-52.)  However, the actions detailed in the Amended Complaint all happened *before* Plaintiff sent her grievances and letters.  Plaintiff was sent home on May 2, 2017, taken off the payroll as of May 27, 2017, and was informed she had been overpaid on August 4, 2017.  Every alleged retaliatory action occurred before she submitted her first grievance on August 14, 2017.  (Am. Compl. 26, 45, 47.)  While Plaintiff was not allowed back at her job for almost three months after her first grievance, there are no allegations in the Amended Complaint that Defendants made any adverse actions during this time.  In other words, the causal connection between Plaintiff's dismissal and her grievances is nonexistent.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's Title VII retaliation claim, and dismisses the claim without prejudice.

**A.  Section 1983**

Plaintiff next alleges Defendants Murphy, Artuz, and Curra discriminated and retaliated against her in violation of her First and Fourteenth Amendment rights.  (Am. Compl. ¶¶ 70-79.)

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Constitutional claims alleging religious discrimination or retaliation brought under section 1983 are evaluated under the same standard as Title VII claims.  *See, e.g. Lewis v. City of Norwalk*, 562 Fed. Appx. 25, 29 (2d Cir. 2014) (analyzing Title VII and § 1983 retaliation claims under the same framework); *Feliciano v. City of New York*, No. 14 Civ. 6751 (PAE), 2015 WL 4393163, at *14 (S.D.N.Y. July 15, 2015) ("As noted, Feliciano also brings claims under both §§ 1981 and 1983.  Claims of discrimination, retaliation, and hostile work environment under these statutes match those under Title VII.").

Here, Plaintiff alleges the three individual Defendants discriminated and retaliated against her because of her religion.  However, for the same reasons that her Title VII claim fails against

DOCCS, Plaintiff has also failed to sufficiently plead Section 1983 claims against the individual Defendants. Specifically, the claims against Defendants Murphy and Artuz fail as they did not commit an adverse employment action against Plaintiff, and the claim against Defendant Curra fails as the facts do not show that she refused Plaintiff's return due to her accommodation request.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's Section 1983 discrimination and retaliation claims, and dismisses the claims without prejudice.

### B. ADA

Plaintiff next alleges DOCCS[6] discriminated against her as an employee with a disability by forcing her to leave work and refusing medical notes approving her return. (Am. Compl. ¶¶ 80-87.)

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane,* 541 U.S. 509, 516–17 (2004). The Second Circuit has held that Title II of the ADA is not intended to cover employment discriminations claims. *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) ("[T]he statute unambiguously limits employment discrimination claims to Title I. A public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees.").

Here, Plaintiff made clear in her Opposition that she is bringing her claim under Title II of the ADA. (Pl.'s Opp. at 12.) Per the Second Circuit, employment discrimination claims must be

---

[6] In her Opposition, Plaintiff concedes that her ADA claim is only against DOCCS. (Pl.'s Opp. at 12.)

brought under Title I.[7]  *Mary Jo C.*, 707 F.3d at 171, *see also Moore v. City of New York,* 15-CV-6600 (GBD) (JLC), 2017 WL 35450, at *19 (S.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017) (holding a retired correctional employee's claim against his former employer for discrimination fell within Title I of the ADA).  Therefore, Plaintiff's ADA claim against DOCCS fails.

However, even if the Court were to reach the merits of Plaintiff's claim under Title I, she would still fail to plausibly allege a claim under the ADA.  In order to establish a *prima facie* case under Title I of the ADA, a claimant must sufficiently allege: "(1) that his [or her] employer is subject to the ADA; (2) that he [or she] was disabled within the meaning of the ADA; (3) that he [or she] was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) that he [or she] suffered an adverse employment action due to his disability."  *Klaes v. Jamestown Bd. of Public Utilities*, No. 11-CV-606, 2013 WL 1337188, at *7 (W.D.N.Y. Mar. 29, 2013) (citing *Cameron v. Communit. Aid for Retarded Children, Inc*., 335 F.3d 60, 63 (2d. Cir. 2003)).  When analyzing a motion to dismiss, the Court will consider the elements of the *prima facie* case "in determining whether there is sufficient factual matter in the complaint" which "gives defendant a fair notice of plaintiff's claim, and the grounds on which it rests."  *Id*. (citing *Murphy v. Suffolk County Community College*, No. 10-CV-0251 (LDW)(AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).

First, it is not clear that Plaintiff suffers a disability.  Per the ADA, the term "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life

---

[7] The cases Plaintiff cites showing "the Second Circuit have allowed plaintiffs to bring claims under Title II in the employee/employer context" are inapposite, as they consist of district court cases all decided before the Second Circuit's decision in *Mary Jo C.*

activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment[.]"  42 U.S.C. § 12102(1).

Plaintiff alleges that diabetes is a physical impairment under the ADA.  (Pl.'s Opp. at 18-19.)  However, diabetes is not always considered a disability for ADA purposes.  *See Epstein v. Kalvin-Miller Int'l, Inc*., 100 F. Supp. 2d 222, 226 (S.D.N.Y. 2000) (holding that the employee's type-2 diabetes was not a disability under the ADA because, as treated, it did not affect his ability to walk or limit any other major life activities).  Here, Plaintiff fails to include any facts in the Amended Complaint that show how her diabetes affects her life or her employment, or otherwise limits her enjoyment of any major life activities.  "Major life activities are generally those activities that are of central importance to daily life" including "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" and "sitting, standing, lifting or reaching."  *Cody v. County of Nassau*, 577 F. Supp. 2d 623, 638–39 (E.D.N.Y. 2008) (internal citations omitted).  Without any facts showing that her diabetes substantially limits a major life activity, Plaintiff has failed to plausibly allege that her diabetes qualifies as a disability for her claim.

Plaintiff was also regarded as having a mental illness after she fell twice due to stress.  (Pl.'s Opp. at 19.)  Being "regarded as having such an impairment" occurs where the claimant "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  A claimant must merely show that "an action . . . was taken because of an actual or perceived impairment, *whether or not* that impairment actually limits or is believed to limit a major life activity."  *Lawton v. Success Acad. Charter Schs*., 323 F. Supp. 3d 353, 364 (E.D.N.Y. 2018) (citing H.R. Rep. No. 110-730, pt. 1, at 14 (2008)).

Here, Plaintiff alleges DOCCS perceived her as having a mental illness, and therefore prevented her from returning to work. The Amended Complaint alleges DOCCS was aware of Plaintiff's perceived mental illness, continued to refuse doctor's notes clearing her for duty, and took her off the payroll. However, even if her mental illness was considered a qualified disability under the ADA, she fails to allege any facts showing she was discriminated against because of it. Indeed, Plaintiff fails to plead any connection between an adverse action and recognition of her mental health status, as Plaintiff concedes that she failed to provide the required paperwork for her return.[8]

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's ADA claim, and dismisses the claim without prejudice.[9]

### C.  N.Y. Executive Law § 296

Plaintiff also raises religious and disability-based discrimination and retaliation claims under New York State Human Rights Law Executive Law §§ 296 against DOCCS.[10]  (Am. Compl. ¶¶ 92-107.)  The pleading standards for discrimination and retaliation claims raised under New York State Law mirror the pleading requirements under Title VII and the ADA, and thus the

---

[8] Additionally, being regarded as having an impairment that is "transitory and minor," or lasts less than six months, is not sufficient for the ADA. 42 U.S.C. § 12102(3)(B). The Amended Complaint is not clear as to exactly when DOCCS accepted that Plaintiff was not mentally ill, so the Court is unable to determine her impairment was not transitory and minor.

[9] To the extent Plaintiff is also alleging a retaliation claim under the ADA, this claim also fails. Title I of the ADA prohibits retaliation against any individual who has "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under the ADA." 42 U.S.C. §12203(a).  "The Second Circuit has concluded that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII when analyzing a claim of retaliation under the ADA." *Klaes,* 2013 WL 1337188, at *9.  Therefore, if Plaintiff is alleging an ADA retaliation claim, it is also dismissed.

[10] In her Opposition, Plaintiff concedes that her state law claim is only against DOCCS. (Pl.'s Opp. at 22.)

viability of Plaintiff's state law claims is the same as that for her federal claims. *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992); *Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 376 (E.D.N.Y. 2015).  Given the Court's dismissal of Plaintiff's Title VII, Section 1983, and ADA claims, the same result is appropriate for Plaintiff's state law claim.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's state law claim, and dismisses the claim without prejudice.

### D.  Preliminary Injunction

In the Amended Complaint, Plaintiff requests a preliminary injunction requiring Defendants (1) "to correct all present and past violations of federal and state law," (2) "to allow the Plaintiff to continue in the position from which Defendants' illegally terminated her," (3) "to enjoin the Defendants from continuing to act in violation of federal and state law" and "to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws."  (Am. Compl. ¶ 20.)

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). In the Second Circuit, a party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party."  *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010); *see also Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009).

In order for the Court to have subject matter jurisdiction, the plaintiff must allege he or she has standing to seek injunctive relief.  "In order to meet the constitutional minimum of standing to

seek injunctive relief, [plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)).  In making this showing, an "abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id*. (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)) (internal quotations omitted).

Further, "an injunction must be more specific than a simple command that the defendant obey the law." *S.C. Johnson & Son, Inc. v. Clorox Co*., 241 F.3d 232, 240 (2d Cir. 2001) (internal quotations omitted).  "Obey the law" injunctions are "vague, do not require the defendants to do anything more than that already imposed by law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement" and are therefore "not favored."  *Dolberry v. Jakob*, 9:11-CV-1018 (DNH/DEP), 2017 WL 2126812, at *4 (N.D.N.Y. May 16, 2017).

Here, the parties do not dispute that Plaintiff has already returned to her position. Additionally, the other three requests, to correct or prevent violations of state and federal law, are vague "obey the law" requests.  Plaintiff does not request the Court enjoin the Defendants from any activity, she just requests that they continue to obey the law.  Further, the actions in Plaintiff's Amended Complaint occurred in 2017.  She has not pled any facts showing any potential for an ongoing or future injury.  Therefore, Plaintiff fails to establish that she has standing to pursue injunctive relief.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's request for a preliminary injunction, and dismisses the request without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED and Plaintiff's request for a preliminary injunction is DENIED.  Plaintiff is granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice. If she chooses to do so, Plaintiff will have until October 11, 2021 to file a Second Amended Complaint consistent with this order.  Defendants are then directed to answer or otherwise respond by November 1, 2021.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 35.


Dated: September 10, 2021                              SO ORDERED:

White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge